IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONYA GRICE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-580 |
| | § | |
| ANDREW SAUL, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Magistrate Judge[2] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 14), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 16), and Defendant's Motion for Summary Judgment (Document No.13), and Plaintiff's Response (Document No. 25). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED, and the matter is REMANDED to the Commissioner for further proceedings.

---

[1] "On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration

[2] The parties consented to proceed before the undersigned Magistrate Judge on April 30, 2020. (Document No.11).

**I. Introduction**

Plaintiff, Tonya Grice ("Grice") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability benefits ("DIB"), and SSI. Grice argues that the Administrative Law Judge ("ALJ") Thomas J. Helget committed errors of law when he found that Grice was not disabled. Grice seeks an order reversing the ALJ's decision, and awarding benefits, or in the alternative, remanding her claims for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Grice was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

**II. Administrative Proceedings**

On December 7, 2015, Grice filed for DIB and SSI claiming she has been disabled beginning November 2, 2015, (Tr. 276-283). The Social Security Administration denied her applications at the initial and reconsideration stages. (Tr. 261-272, 243-256). Grice then requested a hearing before an ALJ. (Tr. 135-136). The Social Security Administration granted her request, and the ALJ held a hearing on July 31, 2018. (Tr.26-55). On October 9, 2018, the ALJ issued his decision finding Grice not disabled. (Tr.7-25).

Grice sought review by the Appeals Council of the ALJ's adverse decision. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering

Grice's contentions in light of the applicable regulations and evidence, the Appeals Council, on July 26, 2019, concluded that there was no basis upon which to grant Grice's request for review. (Tr.1-4). The ALJ's findings and decision thus became final.

Grice has timely filed her appeal of the ALJ's decision. The Commissioner has filed a Motion for Summary Judgment (Document No. 13). Likewise, Plaintiff has filed a Motion for Summary Judgment (Document No. 14). This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1 through 1034. (Document No.7). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)(quotation omitted). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones*, at 693; *Cook v. Heckler*, 750 F.2d

391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do [his] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Garcia v.* Berryhill, 880 F.3d 700, 704 (5th Cir. 2018). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.[3]

---

[3] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will

In the instant action, the ALJ determined, in his October 9, 2018, decision that Grice was not disabled at step five. In particular, the ALJ determined that Grice met the insured status requirements of the Act through December 31, 2018, and that Grice has not engaged in substantial gainful activity since November 2, 2015, the alleged onset date (step one); that Grice's degenerative joint disease (left knee); obesity; right wrist derangement complex tearing and residual effects post surgical repair; degenerative disc disease (lumbar) with sciatica; headaches; arthralgia (left hip); major depression; neurocognitive disorder; schizophrenia; and liver disease were severe impairments and that Grice's hypertension and ankle/foot pain were not severe impairments (step two); that Grice does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in Appendix 1 of the regulations (step three); that Grice has the RFC to perform light work with the following limitations:

> the claimant can occasionally climb ramps or stairs but never climb ropes, ladders, or scaffolds; can occasionally balance, stoop, kneel, crouch, or crawl; is limited to occasional gross handling and fine fingering with the right dominant upper extremity; can occasionally use right hand controls and left foot controls; no work at unprotected heights, around dangerous machinery, or around hazards; is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and, in general, relatively few work place changes in a routine work setting; and is limited to occasional interaction with the general public. (Tr. 15).

The ALJ further found that Grice could not perform her past relevant work (step four); and that based on Grice's RFC, age (48), limited education, work experience, and the testimony of a vocational expert, that Grice could perform work as a child care attendant, an usher, and a bottling line attendant, and that Grice was not disabled within the meaning of the Act (step five). As a result, the Court must determine whether substantial evidence supports the ALJ's step five finding.

In determining whether substantial evidence supports the ALJ's decision, the court weighs

review our final decisions using the rules that were in effect at the time we issued the decisions.").

four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

Grice argues that the ALJ erred in not considering her intellectual disability under Listing 12.05 in light of her Full Scale IQ score of 49. The Commissioner concedes that the ALJ did not consider whether Grice met or equaled Listing 12.05 but counters that the error was harmless because the ALJ applied the "paragraph B" criteria, which applies to all mental listings, and since Grice did not satisfy the "paragraph B" criteria, she was not prejudiced by ALJ's failure to consider whether Grice has an intellectual disorder.

Grice alleges that her intellectual disorder as evidenced by Full of IQ score of 49 is a severe impairment and should have been evaluated under Listing 12.05. The regulations provide that at step two, the claimant bears the burden of showing that she has a severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. The Fifth Circuit in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) held that this language was not in accord with the statute defining disability and opined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." The Fifth Circuit further stated that "[u]nless the correct standard is used, the claim must be remanded to the [Commissioner] for reconsideration." *Id.* at 1106. The Fifth Circuit recently reiterated the *Stone* standard as its "binding precedent" writing: "'[a]n impairment can be considered as not severe *only* if it is a slight abnormality having such

minimal effect on the individual that it would not be expected to interfere with an individual's ability to work, irrespective of age, education or work experience.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018)(quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)(emphasis in original); *Keel v. Saul*, ___F.3d.___, 2021 WL 222142 at *2 (5th Cir. Jan 22, 2021). In the instant action, the ALJ considered Grice at step 2 and 3 whether Grice has a neurocognitive disorder. A key distinction between the two listings is that IQ is not considered for a neurocognitive disorder. The two impairments are not interchangeable.

At step 3, the ALJ must determine whether the claimant's impairment(s) matches, or is equivalent to, one of the listed impairments. The listings describe impairments that prevent the claimant from performing any substantial gainful activity, without consideration of a claimant's age, education and work experience. 20 C.F.R. § 404.1520(d). The ALJ has the burden to identify the relevant listed impairment. Plaintiff has the burden of establishing that his impairment meets or equals an impairment set out in the Listing of Impairments. *See Sullivan v. Zebley* 493 U.S. 521, 530-31 (1990). To establish that a claimant's alleged impairment meet or equal a listing, the claimant must provide medical findings that support all the criteria for a listed impairment (or most similarly listed impairment). *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered. 20 C.F.R. § 404.1526(c). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan,* 493 U.S. at 530.

As discussed above, Grice contends that she meets or equals listing for an intellectual disorder. Listing 12.05 for intellectual disorders, which was effective as of January 17, 2017, provides for presumptive disability if the following requirements of subpart A or B are met:

A. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates and supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage onself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. In support of her argument that she meets or equals listing

12.05, and that the ALJ erred by not applying the appropriate listing, Grice points to the full-scale

IQ score of 49 that she obtained on the Wechsler Adult Intelligence Scale 4th Edition test administered by Cecilia P. Lonnecker, Ph.D. on July 14, 2017. (Tr. 925). The law is clear that courts have recognized that a current IQ score can be considered evidence of IQ prior to age 22 because IQ generally remains stable over time. *See Durden v. Astrue*, 586 F.Supp. 2d 828, 833 (S.D. Tex. 2008); *Adams v. Astrue*, No. 4-10-CV-216, 2011 WL 2550772 at *3 (N.D. Tex. June 27, 2011). The record shows that Grice was evaluated by Dr. Lonnecker on July 14, 2017. (Tr. 921-928). The results of Grice's mental status examination follow:

> **Appearance, Behavior, and Speech:** The claimant is a 50-year-old female of average height and well-nourished build. She was wearing jeans and a purple t-shirt. Posture was maintained. The claimant ambulated withoutout assistive devices. She walked slowly. Toward the end of the session, she complained of some discomfort related to her back. The claimant is right-hand dominant. She wore tinted red hair pulled back in a head band. Her nails were manicured blue. Facial expression was alert. Eye contact was adequately sustained. The claimant's speech was clear. She was quiet. The claimant worked slowly on tasks.
>
> **Thought Processes:** Thought processes were coherent. There was no evidence of tangentiality or perseverations.
>
> **Thought Content:** The claimant vaguely reported suicidal ideation with no plan or intent. As stated above, her information was not always consistent with records.
>
> **Perceptual abnormalities:** The claimant reported hallucinations but did not present as psychotic and was not responding to internal stimuli.
>
> **Mood and Affect:** Mood reported was depressed. Affect was stable.
>
> <u>**Sensorium:**</u>
>
> **Orientation:** The claimant was oriented to year only.
>
> **Immediate Memory:** The claimant recalled three digits forward, three digits in reverse, and none of three words following a delay and distractor task.
>
> **Current Events:** The claimant incorrectly named the current present as Obama. She did not know the name of the current governor or the current mayor.
>
> **Remote Memory:** The claimant named two past presidents when asked to name four. The claimant provided personal demographic information.

>**Calculations:** The claimant calculated a serial three's task committing two errors. She was unable to calculate mental arithmetic problems of single-digit addition and subtraction consistently.
>
>**Proverb Interpretation:** The claimant did not attempt to interpret proverbs.
>
>**Similarities/Differences:** The claimant compared related objects at a concrete level.
>
>**Estimated Intelligence:** The claimant's estimated intelligence was below average however perhaps not to the degree that the claimant's current scores suggest. Her effort appeared limited.
>
>**<u>Judgment and Insight:</u>** When asked "What would you do if you found a stamped, addressed envelope?," the claimant stated she would leave it there. When asked "What would you do if you discovered a fire in the waiting room"," she stated she would call for help. The claimant's insight appeared to be somewhat limited. (Tr. 923-924).

In addition, Dr. Lonnecker administered the Wechsler Adult Intelligence Scale–4th Edition and the Wide Range Achievement Test-Revision 4. On the Wechsler Adult Intelligence test, Grice overall had a full scale IQ of 49. With respect to that score of 49 , Dr. Lonnecker wrote: "[t]he claimant's full scale index measured as deficient. Deficits were reflected in general fund of information and vocabulary, verbal and nonverbal reasoning, working memory applied to verbal tasks, and visual discrimination abilities." (Tr. 925.) Dr. Lonnecker also administered the Wide Range Achievement Test-Revision 4. Dr. Lonnecker wrote that Grice's academic achievement "measured as deficient." (Tr. 925). In diagnosing Grice with major depressive disorder, Dr. Lonnecker wrote: "[t]he claimant's allegation was for intellectual disability. There was no information in records regarding a prior diagnosis Intellectual Disability/Mental Retardation. Her current cognitive and achievement scores were deficient which may have been negatively impacted by limited effort." (Tr. 926). Overall, Dr. Lonnecker opined that Grice's prognosis is "guarded" and that she "may benefit from following the directives of her healthcare team. (Tr. 926). With respect to Grice's functional capacity, Dr. Lonnecker noted that Grice "has limited education" and "may have difficulty in a

competitive work setting." (Tr. 926). Dr. Lonnecker further opined that Grice is "capable of handling her financial affairs *with assistance as needed*." (Tr. 926). (emphasis added). The record shows that Dr. Lonnecker's report is consistent with and corroborated by a mental status examination that had been performed the year before by Keisha Holley Johnson, Ph.D. (Tr. 672-678). Based on Grice's mental status examination, Dr.Johnson estimated Grice's IQ to be "extremely low to borderline range." (Tr. 676). Dr.Johnson further opined that Grice "put forth her best effort and the following results are considered to be a valid assessment of her current level of functioning." (Tr. 674). The results of the mental status and behavioral observations reveal that Grice's responses were abnormal is many areas that were tested by Dr. Johnson.

**Appearance and Behavior:**

Ms. Grice presented appropriately dressed for age and weather. She appeared older than her stated-age of 49 years old. She was right-handed. Psychomotor retardation was observed with Ms. Grice. Eye contact was not consistent. Ms. Grice was very anxious. No problems were noted with vision and hearing. Ms. Grice was cooperative throughout the evaluation. She put for her best effort and the following results are considered to be a valid assessment of her current level of functioning.

**Speech:**
The speech of Ms. Grice was in abnormal limits in articulation, speed, tonality and volume. Expressive and receptive vocabularies were within abnormal limits. Both modes of language appeared delayed than the appropriate age level.

**Thought Process**
Thoughts appeared cohesive, coherent, and organized. However, her processing of information was severely delayed. Current suicidal ideation and homicidal ideation was denied. Hallucinatory experience was currently denied. Reality testing does not seem impaired.

**Mood:**
Ms. Grice reported her mood "most of the day, over the past 14 days" to have been "I'm sad all of the time."

**Sensorium and Cognition**

**Orientation:** Ms. Grice was fully oriented to person, place, and time.

**Memory:** Immediate and delayed memory was variable. Ms. Grice did not have difficulty remembering tasks that were given to her to remember. She did have memory for three target words immediately after presentation, but none of the words after a five to ten minute delay interval.

Remote memory appeared relatively good: Ms. Grice was able to correctly state her first and last night, age and her date of birth. She was also able to correctly cite days of the week, and the months of the year. However, she had difficulty doing these tasks backwards. In addition, she had severe difficulty remembering a series of numbers given to her in an auditory manner forwards and backwards.

**Concentration:**

Was within abnormal limits
Ms. Grice had difficulty concentrating on the tasks given to her.

**Cognitive Functioning**
Abstract concrete logical thinking was inconsistently demonstrated. Ms. Grice was asked to describe how various items are similar and different. Her responses are below in italics:

Differences Between
1) A lie and a mistake–*don't know*
2) an Orange and a baseball–*an orange is orange; a baseball is white*
3) Duck and a turkey–*don't know*

Similarities–Ms. Grice's responses in italics:
1) Elbow/knee–*body parts*
2) book/newspaper–*don't know*
3) joy/anger–*don't know*
4) Fox/dog–*animals*
5) sun/moon–*don't know*
6) ladder/steps–*stand on them*
7) wings/legs–*body parts*

Ms. Grice was asked to explain her understanding of the following axioms. Her responses are in italics:
1) Don't put all your eggs in one basket–*don't know*
2) Strike when the iron is hot–*don't know*
3) When the cat's away, the mice will play–*don't know*
4) Don't cry over spilled mild–*don't know*
5) Rome wasn't built in a day–*things take time*

**Memory and Concentration**
Repeat:   827/8-2-7    2549/2-5-4-9   *17360/1-7-6-3-0
Repeat backwards: 245/5-4-2                    *7184/4-7-8-1         *58379/7-8-3-

                            7-9
  Repeat:   *pencil*   *ball*   *train (immediate response only).*

**Orientation and Judgment:**
The following questions were asked of Ms. Grice. Listed are her responses in italics.
1) What should you do if you cut your finger? *Put some water on it*
2) Why should people go to school? *To become someone*
3) What should you do before crossing the street? *Look both ways*
4) Why shouldn't people play with matches? *Get burned*
5) What should you do in an emergency like a fire or car accident? *Call 911*

**Fundamentals of Knowledge/Intellectual Functioning**
1) Who were the last four presidents: *Obama, Clinton/ Reagan (2/4)*
2) What states border Texas: *California, Louisiana, Tennessee, Oklahoma (2/4)*
3) What direction does the sun set: *in the east (0/1)*
4) How many nickels are there in $2.00: *don't know (0/1)*
5) Define "sanctuary:" *church (1/1)*
6) Largest country in the world by population: *don't know (0/1)*

**Insight and Judgment:** Level of insight into the nature of her psychological problems and treatment needs appears fair. Capacity for judgment appeared consistent.

IQ estimate: *Extremely Low to Borderline range.*

      \*      \*      \*

At this time, Ms. Grice does not appear to have difficulty in her ability to acquire and use information. However, she is also having difficulty in attending to and completing tasks, and in interacting with and relating to others at this time due to her mood difficulties. Her attention, concentration, memory and reasoning abilities, as measured by the mental status examination are inconsistent. (Tr. 674-676**).**

The record further reflects that at the July 18, 2018, hearing, Grice testified that she does not cook because she forgets to turn the stove off and leaves it on.. (Tr. 43). Grice testified that she has more than memory issues and has problems "thinking in general." (Tr. 47). According to Grice, "I just don't know a lot." (Tr. 48). Grice testified that she got into home health "because I didn't have to do a lot of reading or anything. All I had to do was take care of my clients." (Tr. 48). Grice stated that she wanted to go to school to be a LVN but did not because "I don't remember a lot of things." (Tr. 48). In the Function Report that Grice completed on July 13, 2016, she wrote that "for some

reason I can't remember if I've done my personal needs." (Tr. 317). She needs reminders about when to take her medicine. (Tr. 317). Likewise, she "needs reminding" about doing work around the house. (Tr. 317). Grice wrote that "I have a problem remembering things and forgetting where I place things." (Tr. 320). Grice stated that she is easily distracted; does not finish what she starts, and has difficulty following spoken instructions. (Tr. 320).

The law is clear that "[t]he claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Based on Grice's testimony, the consultative examinations of Dr. Lonnecker and Dr. Johnson, and the Function Report, the ALJ erred by not applying the appropriate listing and that the error was not harmless because they highlight deficits in general intellectual functioning and in Grice's abilities to understand, remember or apply information, concentrate, persist or maintain pace and adapt or manage oneself, i.e, areas covered by Paragraph B. The results of Dr. Lonnecker's and Dr. Johnson's examinations show that Grice has extremely low to borderline IQ. While Dr. Lonnecker questioned Grice's effort during testing, Dr. Johnson did not, and the ALJ gave substantial weight to Dr. Johnson's opinion because it "was based on the claimant's presentation at the examination." (Tr. 17). Moreover, tt is unclear how good a historian Grice is in light of her IQ, and neither Dr. Lonnecker nor Dr. Johnson had the benefit of Grice's educational records, and neither report focused on an intellectual disorder. Both reports note Grice's limited education (9th grade), that she was in regular and special education classes, and has not earned a GED. Dr. Lonnecker opined that Grice could have difficulty in a competitive work setting. Because the ALJ did not apply the appropriate listing, further development of the record is necessary, including testimony of an impartial medical expert or a psychological evaluation for an intellectual disorder. Moreover, before proceeding to

step five, the ALJ assessed Grice's RFC. In doing so, the ALJ was required to consider the limiting effects of *all* severe and non-severe impairments. *see Cagle v. Colvin,* No. 4:12cv0296, 2013 WL 2105473, at *5-8 (S.D.Tex. May 14, 2013). Because the ALJ failed to consider *all* of Grice's mental impairments in formulating Grice's RFC that error cannot be considered harmless. *See, e.g., Patel v. Berryhill*, No. 4:16-CV-02066, 2017 WL 4155463, at *3 (S.D. Tex. Sept. 19, 2017)(ALJ did not commit harmless error when he determined plaintiff's medically determinable mental impairments of depression and anxiety were not severe; this error led to the failure to include any mental limitations in the residual-functional-capacity assessment, which in turn, led directly to the conclusion that plaintiff could perform his past relevant work); *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D.Miss. Feb.19, 2013)(remanding case where the "ALJ's decision showed] that he did not seriously consider the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error"). Lastly, the ALJ states that Grice has a "remote diagnosis of schizophrenia but no treatment or medication for this condition." (Tr. 17). The medical records (Tr. 1018-1033) show that Grice has been undergoing treatment for schizophrenia and has been taking medication Ziprasidone (Geodon) for schizophrenia. Because the matter is being remanded, the Court has no reason to address Grice's other arguments.

**V. Conclusion**

Based on the foregoing, and the conclusion that the ALJ erred by failing to consider Grice's intellectual disability under Listing 12.05, and in formulating her RFC, further development of the record is necessary, the Magistrate Judge

ORDERS that Defendant's Motion for Summary Judgment (Document No.13), is DENIED, Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED and that this case is

REMANDED to the Social Security Administration pursuant to Sentence four of 42 U.S.C. §405(g), for further proceedings consistent with this Memorandum and Order

Signed at Houston, Texas, this 4th day of February, 2021

Frances H. Stacy
United States Magistrate Judge